UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DONALD P. LARIVIERE, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) Civil No. 9-515-P-S |
| | ) |
| BANK OF NEW YORK AS TRUSTEE, et al., | ) |
| | ) |
|     Defendants | ) |

## RECOMMENDED DECISION

Donald and Doris Lariviere have been subject to a foreclosure action in state court brought by Bank of New York as Trustee, in care of Litton Loan Servicing, with Mortgage Electronic Registrations Systems, Inc. named as a party in interest. The details of any such action are never explained in any of the pleadings filed in this court and I can find only one exhibit directly related to that proceeding. (See Doc. No. 19-3, a clerk's certificate from the Maine District Court, Division of Western York, certifying the pendency of a foreclosure action). Apparently believing that the best defense to that foreclosure action would be a good offense, the Larivieres have brought suit against a raft of entities that performed various roles in the underlying mortgage transaction. They seek compensatory damages, and declaratory and injunctive relief including "an order expunging the foreclosure and auction of the property of the plaintiffs" and rescission of the mortgage deed.[1] This action began in state court but because the

---

[1] I do note that the Larivieres appear to seek relief barred by the Rooker-Feldman doctrine to the extent they want this Court to set aside or void judgments entered by a state court in Maine. The Rooker-Feldman doctrine holds that federal courts lack subject matter jurisdiction over claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). See also D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009) (affirming dismissal of claims based on Rooker-Feldman doctrine). This Court lacks jurisdiction over the subject matter of these claims to the extent plaintiffs request that it void Maine state court judgments, which appears to be the precise objective of this rather elaborate complaint and all of its various counts.

Larivieres asserted violations of federal law, one of the defendants removed the action to this court prior to service having been completed on all defendants.  It appears that some of the defendants in the action remain unserved at this time, but now three of the defendants, Bank of New York, as Trustee, Litton Loan Servicing LP, and Mortgage Electronic Registrations Systems, Inc. ("the Litton defendants") have moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6) and 12(e).  I now recommend that the court grant the motion and I further recommend that the remainder of this action against other defendants be dismissed because of the Larivieres failure to complete service or identify the remaining defendants in a timely manner.

## The Procedural Background

The Larivieres began this action by filing a complaint in the York County Superior Court on June 24, 2009.  On October 15, 2009, one of the defendants, Litton Loan Servicing, L.P., removed the action to this court (See Doc. No. 1, Notice of Removal) and shortly thereafter filed a motion for a more definite statement. (Doc. No. 5).  The Larivieres never responded to the motion.  I agreed with Litton that the original complaint was hopelessly flawed because it failed to identify what role each defendant played in this transaction and what allegations pertained to which defendants.  I ordered the Larivieres to file an amended complaint by December 1, 2009. (Doc. No. 7).  December first came and went with no response from the Larivieres and I then, in an abundance of caution, issued an Order to Show Cause (Doc. No. 9) requiring the Larivieres to respond to this court by December 16, 2009, failing which their complaint as against Litton would be dismissed for failure to diligently respond.  December 16 came and went with no response and on December 21, 2009, I prepared and docketed a recommended decision that

would have led to the dismissal of the action against Litton and a remand of the remainder of the action to state court. (Doc. No. 10).

On January 5, 2010, the Larivieres filed a motion to extend time to file their amended complaint. Although the motion bore the caption of the federal district court, it also was marked with a date stamp indicating it had been filed in the York County Clerks' Office on December 7, 2009. (See Doc. No. 11). The motion, assuming it was filed in the Superior Court rather than this court, was filed seven days after the deadline and failed to show cause for extending the deadline for another sixty days as requested. On January 5 the Larivieres also filed an amended complaint (Doc. No. 12) and a response to the order to show cause (that had been due on December 16, 2009), without offering any explanation at all for their tardy compliance with that order (Doc. No. 13) and, of course, they also filed an objection to my recommended decision (Doc. No. 14) explaining that they had filed everything in the wrong court, but not providing any copies of documents supporting that contention, although they claimed in the objection that Exhibit A and Exhibit B clarified how all their responses had been improperly filed. (I note that only the motion for extension, separately docketed on January 5, 2010, bears a date stamp from some entity other than this court and that date stamp is December 7. The response to the Order to Show Cause was not due in this court until December 16. The Amended Complaint and the Response to the Order to Show Cause do not bear that date stamp.)

At this point Litton, the only defendant who had appeared in the action, filed a motion to extend time to file its own objections to the recommended decision (which was a little hard to grasp since I had recommended the matter against them be dismissed with prejudice) rather than a substantive response to the objection made by the Larivieres or a response to their motion to extend time. The District Court Judge sent the entire matter back to me (Doc. No. 16) and I

determined that the only way forward for me was to treat the entire affair as a "Mulligan" and start over (Doc. No. 17), setting March 1, 2010, as the date by which the Larivieres had to file an amended complaint that complied with my earlier order.

At this point Bank of New York, as Trustee, and Mortgage Electronic Registration Systems joined the affray through the entry of appearances on their behalf by the same counsel who had previously represented Litton.[2] (Doc. No. 18). I refer to this group of three as the Litton defendants, although the pleadings do not fully explain the interrelationship between the three entities. On March 1, 2010, the Larivieres filed their "amended complaint," remarkably similar to their original complaint, but accompanied by five exhibits, including the one exhibit which had also accompanied the original complaint, a letter from a US Attorney/British Solicitor on behalf of the Larivieres sent to Litton pursuant to 12 U.S.C. § 2605(e) on or about January 2, 2009. The Litton defendants followed with a motion to dismiss (Doc. No. 21) raising once again the Larivieres' failure to comply with my order that they file an amended complaint that complied with Rule 8(a)(2).

The Larivieres filed their response on April 5, 2010, but lo and behold, that response was nothing more than a copy of the response they had previously filed to Bank of America's motion to dismiss. (See footnote 2). Since the Litton defendants have not chosen to raise any issue about insufficient service of process the response makes no sense. However, when the Litton defendants filed their reply (*and Motion to Strike*) it was accompanied by a document that had been mailed to them by the Larivieres (Doc. 29-1) which appears to be plaintiffs' substantive response to the Litton defendants' motion to dismiss. The Larivieres have never filed that

---

[2] Bank of America, represented by separate counsel, also decided to put its two cents worth into the game by filing a motion to dismiss for insufficient service of process. (Doc. No. 20). Ultimately the District Court Judge granted that motion (Doc. No. 27). I only mention this diversion because it becomes relevant in the ongoing struggle with the Litton defendants a little later.

document with this court and there is nothing for me to strike from the record other than the pleading the defendants have themselves filed. Rather than engage in that exercise and once more be confronted with an excuse for tardy filings by the Larivieres, I have read plaintiffs' opposition as filed by defendants and fully considered it in fashioning my recommendation. The operative pleading in this case is now the "Amended Complaint" found at Docket Entry 19, accompanied by five exhibits which are considered as part of the allegations of the complaint. It is those documents which I have relied upon in fashioning this recommendation.

**Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6), the procedural vehicle for the defendants' motion, provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a civil action in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that depict the manner by which the defendants subjected the plaintiffs to a harm for which the law affords a remedy. Ashcroft v. Iqbal, __U.S. __, __ 129 S. Ct. 1937, 1949 (2009). The factual allegations need not be elaborate, but they must be minimally sufficient to show a plausible entitlement to relief so that the defendant will have "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Additionally,

because the Larivieres are pro se litigants, their complaint is to be subjected to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). As pro se litigants, their pleadings also may be interpreted in light of supplemental submissions, such as their responses to the motions to dismiss. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003). In appropriate circumstances, pro se litigants also may be entitled to an opportunity to amend before their claims are dismissed with prejudice. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004); Cote v. Maloney, 152 Fed. Appx. 6, 8 (1st Cir. 2005) (not submitted for publication).

The Larivieres have been given abundant opportunity to amend their complaint. These defendants, all seeking to take advantage of the original Order requiring a more definite statement, have invoked Rule 12(e) as the basis for their motion to dismiss. The Larivieres, as pro se litigants, have tried to substantially comply with my original order in that they have absolutely clarified which allegations pertain to which defendants. What the Larivieres have failed to do in their amended complaint is to provide any clarification by way of additional facts as to what role each of the defendants played in this "fraudulent scheme." The defendants claim that they are still unable to fashion a proper response under Rule 12(e).[3] I have not based my recommendation solely upon the Larivieres' failure to comply with the prior Order, but I have carefully analyzed the allegations as to these three defendants under the lens of Rule 12(b)(6) in fashioning this recommendation. Given the history of this litigation and the Larivieres complete failure to follow the most simple of rules of procedure (such as properly filing their opposition to this motion with this court, not just with the defendants), I am satisfied that dismissal of this

---

3  As the Larivieres rather wryly note in their opposition to the motion (the one they never bothered to file in this court and which was furnished to the court by the defendants, Doc. No. 29-1), they have tried mightily to make what they see as the unintelligible and convoluted scheme employed by the Defendants simple enough for even attorneys to understand and formulate a defense.

6

complaint is warranted rather than allowing the Larivieres yet another opportunity to attempt to amend their complaint. It appears from the little factual content I can glean from the complaint that these defendants did nothing other than to purchase this securitized mortgage and/or service the loan in some fashion after the original closing had taken place. A foreclosure ensued when the Larivieres defaulted on their note. While the Larivieres may disagree with the process whereby their mortgage was sold by the entity they identify as a "nominal defendant," they have not stated legal claims against these three defendants who are now before the court.

## Discussion

The Larivieres' complaint consists of twelve separate counts of which eleven are brought against Litton, nine are brought against Litton and New York Bank as Trustee, and seven are brought against Litton, New York Bank as Trustee, and Mortgage Electronic Registration Systems, Inc. (MERS). The first count of the complaint, alleging a violation of the Home Ownership Equity Protection Act, 15 U.S.C. § 1639, et. seq. is only brought against the original lender, First Residential Mortgage.[4] I do not discuss that count in this recommended decision.

By way of general allegations the complaint reveals that the Larivieres are "nominal payors" of a promissory note secured by a mortgage on property at 3 Devotion Avenue in Sanford, Maine, based on a loan from First Residential Mortgage who then sold the loan to an intermediary who is alleged to have ultimately sold it to Litton Loan Servicing, LP. (Am. Compl. ¶ 4). The Bank of New York as Trustee commenced a foreclosure action against the Larivieres' property. (Id. ¶ 25.1). The Bank of New York as Trustee served a Notice of Default

---

[4] One of the innovations of the Amended Complaint (Doc. No. 19) as opposed to the original state court complaint is that it captions each count with the name of the defendant putatively implicated by that count. This simple pleading technique has gone a long way toward assisting me in at least understanding the allegations of the Larivieres' complaint. In this sense they have technically complied with the order for a more definite statement in that they were specifically directed to identify what claims pertain to which defendants. While the headings do not provide any additional substance to the factual allegations, they do clarify the proceedings and they are part of the reason why I conclude that Rule 12(e) fails to provide the sole basis for dismissal.

7

on the Larivieres on May 29, 2007. (Id. ¶ 25.3). The Larivieres parenthetically note that a deed of assignment was made between MERS and Bank of New York on August 21, 2007, and they draw a legal conclusion from that fact. (Id.) The Larivieres further allege that MERS was a "nominee" and did not fund any loans, was never identified as a payee of any loan, and is not entitled to receive any proceeds of the foreclosure sale. (Id. ¶ 25.4). Numerous other general allegations in the complaint refer to the defendants in the plural, but the above referenced paragraphs are the only places where the three moving defendants are identified by name and specific conduct is made attributable to them until they are again referenced in specific counts of the complaint. Many of the general allegations pertain to conduct occurring at the closing when apparently none of these defendants were involved in the transaction. There is an entire section of the complaint (id. ¶¶ 26-30.2) under the heading "Significance of REMIC" that discusses mortgage backed securities and the nature of a "Real Estate Mortgage Investment Conduit" pursuant to 15 U.S.C. § 806 A-G and the regulations promulgated pursuant to those provisions. What these representations/conclusory allegations add in relationship to each of these three specific defendants is not clearly explained, except the defendants are collectively alleged to have created "unrealistic and false market expectations, deceiving the public as a whole." It appears that the Larivieres' complaint echoes many of the sort of allegations found in the recent complaint of the SEC filed in another action in a different United States District Court: "[T]he fabulous Fab[rice Tourre] . . . standing in the middle of all these complex, highly leveraged, exotic trades he created without necessarily understanding all of the implications of those monstrosities!!!" S.E.C. v. Goldman Sachs & Co., et. al, Compl. ¶ 18, Civ. No. 1:10-3493 (BSJ) (S.D.N.Y.). The Larivieres allege they have become the indirect victims of this sort of exotic trade because of a "securitization scheme" (Am. Compl. ¶ 2) involving the promissory

note/mortgage they signed. While the Larivieres' general premise is clear, the allegations of their complaint, as they pertain specifically to these three defendants and the legal claims they have chosen to bring against them, are not nearly so easy to decipher. In the final analysis the Larivieres' complaint against these three defendants is nothing more than a twenty–seven page hodge podge of conclusory allegations about the process of securitizing subprime mortgages and reselling them to investors. Many people in this country are dissatisfied and upset by that process, but it does not mean that the Larivieres have stated legally cognizable claims against these defendants in their amended complaint.

### *Count II Real Estate Settlement Procedures Act [RESPA] as against [original lender], The Bank of New York as Trustee, Litton Loan Servicing, LP*

The Larivieres identify 12 U.S.C. ¶ 2607(d)(2) as a federal statute which allows a plaintiff to recover three times the amount of any charge paid for a settlement service in violation of the Act (Am. Compl. ¶ 70) and bring this count under that provision. The term "settlement service" is defined to include:

> any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement ....

12 U.S.C. § 2602(3).

The complaint plainly identifies the Litton defendants as coming into the transaction after the real estate closing had occurred. (See Am. Compl. ¶ 4), Litton purchased a loan from Bank of America who purchased Countrywide who bought it from the original lender; (Id. ¶ 25.3; The Bank of New York, as Trustee received a deed of assignment on August 21, 2007; Ex. A, Litton

Loan Servicing letter, Doc. No. 19-1.[5]). There are no meaningful allegations that support a plausible claim under this count.

### Count III Violations of Federal Truth-in-Lending Act as against The Bank of New York as Trustee, Litton Loan Servicing, LP [original lender, here identified as the "nominal defendant"] and MERS

The Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f, is a subchapter within the Consumer Credit Protection Act. In general, TILA requires creditors to make certain disclosures to borrowers in connection with the provision of credit. Sullivan v. Greenwood Credit Union, 520 F.3d 70, 73 (1st Cir. 2008). TILA subjects creditors to civil liability should they fail to make the required disclosures. Id. at 74. The disclosure requirements of TILA are informed by Regulation Z, authored by the Federal Reserve Board. Santos-Rodriguez v. Doral Mortgage Corp., 485 F.3d 12, 14 (1st Cir. 2007). A TILA cause of action commonly cannot be brought against a broker in a credit transaction because a broker is not a creditor subject to TILA's disclosure mandates. See 15 U.S.C. § 1602 (f); see also 12 C.F.R. § 226.2(a)(17) (Regulation Z definition of creditor); (Am. Compl. ¶ 42.) Despite the conclusory assertion in Paragraph 42 of the Amended Complaint, clearly MERS does not meet this definition of creditor in connection with this transaction. (Am. Compl. ¶ 25.4(1))("MERS does not fund any loans."). If MERS did not fund the loan it certainly did not extend consumer credit to the Larivieres. The TILA violations alleged in the Amended Complaint's arguably nonconclusory factual allegations are those made against First Residential Mortgage Network, Inc. (See Am. Compl. ¶¶ 34 – 37.) There is no TILA claim that has been properly alleged against the three Litton defendants.

---

5    Litton's failure to comply with 12 U.S.C. 2605(f)(1) is not alleged in the complaint. That is the civil claim under RESPA against a loan servicing entity for notification failures discussed in the cited exhibit.

***Count IV Violation of the Fair Credit Reporting Act as against [original lender], The Bank of New York as Trustee, Litton Loan Servicing, LP and First Residential Mortgage Network, Inc.[6]***

In Paragraph 76 of the amended complaint, the Larivieres do add a factual allegation against two of the moving defendants. They claim that these two defendants provided information to Credit Reporting Agencies and in doing so they improperly reported negative information. Plaintiffs do not allege that these two defendants provided false information, only that they reported the plaintiffs had an "excessive amount of debt." (Am. Compl. ¶ 76.1.) The count does not allege a violation of the Fair Credit Reporting Act because, for one thing, the Larivieres have not alleged that they complied with the notice provisions of 15 U.S.C. § 1681i(a)(1) or otherwise met the prerequisites to state a claim under the Fair Credit Reporting Act. See generally Chiang v. Verizon New England, Inc., 595 F.3d 26 (1st Cir. 2010).

***Count V Fraudulent Misrepresentation against The Bank of New York as Trustee, Litton Loan Servicing, LP, [original lender] and MERS***

A claim of fraudulent misrepresentation requires that the following: (1) defendant made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing the plaintiffs to act in reliance upon it; and (5) the plaintiffs justifiably relied upon the representation as true and acted upon it to their damage. Maine Eye Care Assocs. P.A. v. Gorman, 2008 ME 36, ¶ 12, 942 A.2d 707, 711. As to the Litton defendants, there are no factual allegations at all about any false representations they individually made and paragraphs eighty through eighty-six of the complaint contain only conclusory "the defendants unlawfully harmed me" type of statements.

---

[6] Plaintiffs appear to allege that First Residential Mortgage Network Inc., the named defendant, is different from the original lender which is First Residential Mortgage. All the more reason why the complaint against the First Residential defendants should be dismissed for failure to make service as I have recommended at the conclusion of this recommended decision.

11

*Count VI  Breach of Fiduciary Duty against The Bank of New York as Trustee, Litton Loan Servicing, [original lender]*

The elements of fiduciary relationship are:  "'(1) the actual placing of trust or confidence in fact by one party in another,' and (2) 'a great disparity of position and influence between the parties at issue.'"  Byran R. v. Watchtower Bible & Tract Soc'y of New York, Inc., 1999 ME 144, ¶ 10, 738 A.2d 839, 846 (quoting Morriss v. Resolution Trust Corp., 622 A.2d 708, 712 (Me. 1993)).   "A mortgagee-mortgagor relationship does not, without more, create a duty of care between a bank and a customer."  Camden Nat'l Bank v. Crest Const., Inc., 2008 ME 113, ¶ 11, 952 A.2d 213, 216.  Nor does a borrower-lender or creditor-debtor relationship, standing alone, establish the existence of a confidential relationship.  Stewart v. Machias Sav. Bank, 2000 ME 207, ¶ 11, 762 A.2d 44, 46.  As to these Litton defendants, the Larivieres have related absolutely no factual assertions regarding their placement of trust and confidence in these defendants.  Indeed the allegations in this count relate primarily into the circumstances regarding the original loan transaction, conducted with the party now identified as a "nominal defendant."  The complaint does not state a claim.

*Count VII Unjust Enrichment against The Bank of New York as Trustee, Litton Loan Servicing, [original lender] and MERS*

The Maine Law Court has "consistently held that a claim for unjust enrichment is established with proof that (1) the claimant 'conferred a benefit on' the receiving party, (2) the receiving party 'had appreciation or knowledge of the benefit,' and (3) 'acceptance or retention of the benefit was under circumstances that make it inequitable for [the receiving party] to retain the benefit without payment of its value.'"  In re Estate of Anderson, 2010 ME 10, ¶ 10,  988 A.2d 977, 980 (quoting In re Estate of Miller, 2008 ME 176, ¶ 29, 960 A.2d 1140, 1147).  The unjust enrichment count claims these defendants were unjustly enriched through the receipt of

payments by third parties. (Am. Compl. ¶ 95.1). This allegation does not further a claim of unjust enrichment against these defendants. The remainder of the unjust enrichment claim appears to relate to the original loan transaction, claiming, in a conclusory fashion, that these defendants charged "a higher interest rate, fees, rebates, kickbacks and profits (including but not limited to from resale of mortgages and notes" presumably in connection with the underlying loan transaction. Other than the conclusory "conspiracy" allegations that have no factual underpinnings there is not a single allegation in the complaint that could be fairly read to suggest that the Litton defendants were involved in the original loan transaction. In fact, as indicated above they are identified as the party who bought the mortgage and note from the Bank of America which was not the original lender either. There is no claim of unjust enrichment here.

### *Count VIII Civil Conspiracy against The Bank of New York as Trustee, Litton Loan Servicing, [original lender] and MERS*

Under Maine law a civil conspiracy count fails unless the pleader has successfully pled "the actual commission of some independently recognized tort." Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell, 1998 ME 70, ¶ 8, 708 A.2d 283, 286. Since none of the counts successfully plead any tort claim, a claim of civil conspiracy necessarily fails as well.

### *Count IX Civil Rico against same four defendants*

RICO permits "[a]ny person injured in his business or property" by a pattern of racketeering activity to sue the racketeer in federal court for treble damages. 18 U.S.C. § 1964(c). To be liable, a RICO defendant must have participated or be participating in the alleged racketeering activity while conducting the affairs of an "enterprise" with which he is affiliated or employed and such activity must affect interstate commerce. 18 U.S.C. § 1962(c). The elements of a § 1962(c) claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity." Sedima, S.P.E.I. v. Imrex Co., Inc., 472 U.S. 379, 496 (1985); accord Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991).

An enterprise "includes any individual, partnership, corporation, association, or other legal entity," as well as any association of individuals, whether or not they operate through a legal entity. 18 U.S.C. § 1961(4). Importantly, the RICO "enterprise" is itself never a proper RICO defendant. Rather, it is the persons or entities conducting racketeering activity through the enterprise who are liable. Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44-45 (1st Cir. 1991). ("[T]he same entity cannot do double duty as both the RICO defendant and the RICO enterprise.") There are many reasons why this complaint fails to state a claim under RICO but rather than belabor the point, I note that in Paragraph 107 of the amended complaint the plaintiffs allege that each of the defendants is a RICO enterprise. Their count fails to state a claim.

### *Count X Complaint to Quiet Title to Real Property against Litton Loan Servicing only*

This complaint does not state a claim to quiet title. The allegations do not even include a description of the property about which there is a claimed title dispute. However if, as the allegations seemingly suggest, Litton Loan Servicing commenced a foreclosure against the Larivieres in state court in York County, then this complaint to quiet title might well have been a compulsory counterclaim in that action under Maine Rule of Civil Procedure 13(a)(1). The point is the pleadings in this case provide only conclusory allegations and do not state a claim to quiet title. The pleadings do not begin to give a description of real property in dispute or the chronology of facts that have created a dispute regarding the title between Litton and the Larivieres. In fact this count of the complaint, as set forth in Paragraph 111, appears to be contingent on the plaintiffs' rescission of the subject loan transaction. While plaintiffs may have sent notices of intent to rescind the subject loan transaction, they have not alleged that such

rescission was actually ever timely effectuated or that they *ever* were ready, willing, and able to rescind the loan transaction.

### Count XI  Usury and Fraud against the Bank of New York as Trustee, Litton Loan Servicing [original lender] and MERS

Under the Maine Rules of Civil Procedure a plaintiff alleging fraud must plead "with particularity" the circumstances constituting the fraud. Me. R. Civ. P. 9(b); Bean v. Cummings, 2008 ME 18, ¶ 8, 939 A.2d 676, 679. The Larivieres' complaint is void of any specific fraudulent averments made to them by any of these three defendants. As a matter of law the complaint fails to state a claim for fraud. Usury does not appear to be an independent cause of action under Maine law, although the defense of usury may be available to void a contract sought to be enforced by the defendants. See Vermeule v. Vermeule, 95 Me. 138, 49 A. 608 (Me. 1901). Defendants do not seek enforcement of any contract in this court and "usury" does not state a claim against them.

### Count XII  Economic Duress against the Bank of New York as Trustee and Litton Loan Servicing

The Maine Law Court has referenced an independent legal cause of action for economic duress in only one case that I can find, Linscott v. State Farm Mut. Auto Ins. Co., 368 A.2d 1161 (Me. 1977). In that case the Law Court determined that a defendant's use of geographical location other than Maine for litigation, inconvenience, and, most significantly in terms of this case, economic pressure, were insufficient to state a claim for duress. The Restatement (second) of Contracts § 493 (1979) suggests that duress is made out by threats of personal violence, imprisonment, threats of wrongfully seizing property or other acts that would cause a person to manifest assent because of fear when entering into a transaction. The Larivieres have made no such allegations and have not stated a claim for economic duress.

*The Remaining Defendant /Unknown Investors*

The original complaint was dated June 9, 2009, and filed in the state court on June 23, 2009. First Residential Network, the entity named as the original defendant in the state court complaint, has become First Residential Mortgage Network, Inc., now identified as a 'nominal defendant' in the amended complaint. On September 14, 2009, someone (the signature is illegible) made a proof service regarding the state court complaint saying he had sent a copy of the complaint and summons by certified mail to Frist [sic] Resendential [sic] Mortgage (Doc. No. 8) in Kentucky. This is not sufficient service under the Maine Rules of Civil Procedure nor have plaintiffs ever attempted to make proper service of their amended complaint since the action was removed to this court. More than 120 days have elapsed since this action was filed and Rule 4(m) of the Federal Rules of Civil Procedure provides the basis for dismissal. The action against First Residential should be dismissed without prejudice. Likewise the action against Unknown Investors is meaningless and should be dismissed. The Unknown Investors are not named in any of the counts of the complaint and they are not proper defendants. These two parties are the only remaining defendants and if they are dismissed the entire matter will be concluded on our docket.

## Conclusion

Based upon the foregoing I recommend that this complaint be dismissed with prejudice in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being

served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 7, 2010